UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

FILED
1/21/10

CLERK, U. S. DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE, FLORIDA

UNITED STATES OF AMERICA

v.

TONY DEVAUGHN NELSON
FRANK S. BERNARDINO

| | |
|---|---|
| Case No. | 3:10-cr-23-J-34JRK |
| Ct.      1: | 18 U.S.C. § 371 |
| Cts.   2-13: | 18 U.S.C. §§ 1341, 1346 & 2 |
| Cts. 14-24: | 18 U.S.C. §§1956(a)(1)(B)(i) & 2 |
| Cts.  25-36: | 18 U.S.C. §§ 666((a)(1)(B) & 2 |
| Cts.  37-43: | 18 U.S.C. §§ 1341 & 2 |
| Ct.      44: | 18 U.S.C. § 1001 |
| Forfeiture: | 18 U.S.C. § 981(a)(1)(C) and |
| | 21 U.S.C. § 2461(c) |
| | 18 U.S.C. § 982 |

**INDICTMENT**

The Grand Jury charges:

**COUNT ONE**

**A. INTRODUCTION**

At all times material herein, unless otherwise specified:

**THE DEFENDANTS**

1.     TONY DEVAUGHN NELSON, a resident of Jacksonville, Florida, was a

businessman, owning and operating numerous State of Florida corporations, holding

high-level positions in several non-profit organizations, and holding an appointed

position on the Jacksonville Port Authority (Jaxport).  TONY DEVAUGH NELSON, was

a Jaxport board member, and acted as an agent of that organization within the meaning

of Title 18, United States Code, Section 666(d)(1).

2.     FRANK S. BERNARDINO, a resident of Tallahassee, Florida, was a licensed lobbyist, owning and operating the Wren Group, Inc., a consulting and lobby services business with offices in West Palm Beach and Tallahassee, Florida.

### CO-CONSPIRATOR

3.     Lance William Young, a resident of Winter Park, Florida, owned and operated Subaqueous Services, Inc. (SSI), a Florida corporation engaged in the marine dredging industry with its business headquarters in Orlando, Florida.  On February 29, 2008, Young sold his dredging company, SSI, to an international marine service company, Orion Marine Group, Inc.  (Orion).  Orion's purchase of SSI was an asset sale and SSI became Subaqueous Services, LLC.  As part of the terms of the sale, Young was employed by Subaqueous Services, LLC as a consultant for a term of three (3) years following the sale of SSI.

### ENTITIES INVOLVED IN THE FRAUDULENT SCHEME

4.     The Jacksonville Port Authority (Jaxport) was an organization and independent governmental agency of the State of Florida and was responsible for the development and management of Jacksonville's public seaport terminals.  Jaxport was governed by a seven (7) member board of directors who serve in an unpaid capacity for four year terms.  The Mayor of the City of Jacksonville appoints four (4) of the board's members and the Governor of the State of Florida appoints three (3) of the board's members.  NELSON was originally appointed to Jaxport's board of directors by the Mayor of Jacksonville in 2001 and was re-appointed by the Mayor of Jacksonville in 2005.

2

Board members provide policy guidance for the authority and meet once per month in public board meetings.   At least four members of the authority must approve any action to be taken by the authority.   Resolutions adopted by the vote of at least four members of the authority become effective without further action by the authority.   The board members were responsible for employing and fixing the compensation of the Jaxport Chief Executive Officer, who manage the affairs of the authority under the supervision and control of the board of directors.

After February 8, 2007, purchasing items or services in excess of $250,000 were forwarded from the Jaxport Awards Committee to the Board of Directors with a recommendation for or against approval.   The Board was required to review, approve, or reject all procurement transactions in excess of $250,000.   Jaxport received federal benefits and assistance in excess of $10,000 annually during the years 2005 through 2008.

5.     Muirfield Partners was a State of Florida for profit company which was incorporated by NELSON in 2001 in order for Muirfield Partners to secure certain "minority set-aside" contracts available through the Better Jacksonville Plan.   Services available included engineering, business and financial management, public relations, contract management, and EEO outreach and compliance activities.

6.     JA-Ash Enterprises, Inc. (JA-Ash) was a State of Florida for profit company incorporated by NELSON.

7.     Subaqueous Services, Inc. (SSI) was a State of Florida for profit company owned and operated by Young.  SSI, headquartered in Orlando, Florida, was a marine trade business, principally involved in dredging waterways, including ship terminals for

3

Jaxport.  SSI first received a contract with Jaxport in December 2005 and continuously had business with Jaxport through at least April 2008.

8.     The Wren Group, Inc., was a State of Florida for profit company which provided consulting and lobby services throughout the State of Florida.  The Wren Group, Inc., was owned and operated by BERNARDINO.

## B. CHARGE

From at least mid 2006, through on or about April 23, 2008, at Duval, Volusia, and Orange Counties, in the Middle District of Florida and Leon County, in the Northern District of Florida, and elsewhere,

TONY DEVAUGHN NELSON,
FRANK S. BERNARDINO,

the defendants herein, along with Lance William Young, did knowingly and willfully combine, conspire, confederate and agree with each other to commit offenses against the United States, to wit:

1.     To execute and attempt to execute a scheme and artifice to defraud, and to fraudulently deprive the public of the intangible right of honest services, by utilizing private and commercial interstate carriers, for the purpose of executing such scheme and artifice, in violation of Title 18, United States Code, Sections 1341 and 1346;

2.     To, while being an agent of an organization of a State, corruptly solicit, demand, accept and agree to accept a thing of value from a person, intending to be influenced and rewarded in connection with a transaction and series of transactions of such organization and agency involving $5,000 or more, in violation of Title 18, United States Code, Section 666(a)(1)(B); and,

4

3.      To conduct and attempt to conduct a financial transaction which in fact involved the proceeds of specified unlawful activity, knowing that the property involved in a financial transaction represented the proceeds of some form of unlawful activity, with the intent to conceal and disguise the nature, the source, the ownership and control of the proceeds of the specified unlawful activity, in violation of Title 18, United States Code, Section 1956(a)(1)(B)(i).

## C. MANNER AND MEANS

1.      It was part of the conspiracy that NELSON would dishonestly and corruptly utilize his position as a public official, that is, a Jaxport board member, to demand and accept bribe money.

2.      It was further part of the conspiracy that NELSON would corruptly demand, seek, receive and accept items of value, including money, from Young in return for being influenced in the performance of his official duties.

3.      It was further part of the conspiracy that Young, in order to corruptly make monthly payments to NELSON, would recruit the assistance of BERNARDINO to mask and conceal the nature of the financial payments from Young to NELSON.

4.      It was further part of the conspiracy that NELSON and BERNARDINO would create a sham contract in order to fraudulently provide an air of legitimacy to the monthly payments received by NELSON from BERNARDINO on behalf of Young.

5.      It was further part of the conspiracy that Young and BERNARDINO would fraudulently modify an existing contract between Young and BERNARDINO in order to conceal the nature of the payments made by Young, through BERNARDINO, to NELSON.

5

6.     It was further part of the conspiracy that Young would make a lump sum payment to BERNARDINO in order for BERNARDINO to make monthly payments to NELSON.

7.     It was further part of the conspiracy that BERNARDINO would cause monthly checks to be sent and delivered by commercial interstate carrier to NELSON, which masked and concealed the true nature of the payments to NELSON.

8.     It was further part of the conspiracy that BERNARDINO would cause checks from The Wren Group, Inc., to be issued and made payable to Ja-Ash, Inc., in order to conceal the nature of the payments from Young to NELSON.

9.     It was further part of the conspiracy that the corrupt payments from Young to NELSON would be deposited into a corporate account held by JA-Ash and controlled by NELSON.

10.     It was further part of the conspiracy that NELSON would withdraw funds from the corporate account in which the corrupt payments from Young had been deposited.

11.     It was further part of the conspiracy that the conspirators would perform acts and make statements to hide and conceal and cause to be hidden and concealed the purpose of the conspiracy and the acts committed in furtherance thereof.

## D. <u>OVERT ACTS</u>

In furtherance of the conspiracy and to effect the objects thereof, the following overt acts, among others, were committed in the Middle District of Florida, and elsewhere:

1.      In or about mid 2006, NELSON corruptly demanded $102,000 payable in monthly installments of $8,500 from Young, in order for NELSON to be corruptly influenced in the performance of his official duties as the then-sitting Chairman of the Jaxport Board of Directors.

2.      In or about mid 2006, Young agreed to make monthly payments of $8,500 to NELSON in order for NELSON to be corruptly influenced in the performance of his official duties as a Jaxport Board Member with regards to Young's business, SSI, with Jaxport.

3.      In or about August 2006, Young asked BERNARDINO to act as a conduit for corrupt payments totaling $102,000 from Young to NELSON.

4.      In or about August 2006, BERNARDINO agreed to act as the conduit for corrupt payments totaling $102,000 from Young to NELSON.

5.      On or about August 17, 2006, a Professional Services Contract between Young's company, SSI, and BERNARDINO's company, The Wren Group, Inc., was modified as to the amount of compensation for the services The Wren Group, Inc. would provide SSI by increasing the annual compensation from $200,000 to $302,000, in order to hide and conceal corrupt payments BERNARDINO had agreed to make to NELSON on behalf of Young.

6.     On or about August 17, 2006, BERNARDINO transmitted, by email, a sham contract to NELSON, allegedly between The Wren Group, Inc. and JA-Ash, Inc., falsely representing that NELSON would provide consulting services to The Wren Group, Inc., when in truth and fact, the contract was merely a mechanism to conceal corrupt payments from Young to NELSON.

7.     On or about August 17, 2006, BERNARDINO caused check number 1114, drawn on the account of The Wren Group, Inc., payable to JA-Ash Inc., in the amount of $8,500, to be sent and delivered by Federal Express from Tallahassee, Florida, to 2933 North Myrtle Avenue, Jacksonville, Florida.

8.     On or about August 18, 2006, NELSON caused check number 1114, drawn on the account of The Wren Group, Inc., at SunTrust, made payable to JA-Ash Inc., in the amount of $8,500, to be deposited into JA-Ash Enterprises, Inc. account at Wachovia Bank, account number XXXXX76.

9.     On or about September 28, 2006, BERNARDINO caused check number 1135, drawn on the account of The Wren Group, Inc., payable to JA-Ash Inc., in the amount of $8,500, to be sent and delivered by Federal Express from Tallahassee, Florida, to 2933 North Myrtle Avenue, Jacksonville, Florida.

10.     On or about October 3, 2006, NELSON caused check number 1135, drawn on the account of The Wren Group, Inc., at SunTrust, made payable to JA-Ash Inc., in the amount of $8,500, to be deposited into JA-Ash Enterprises, Inc. account at Wachovia Bank, account number XXXXX76.

11.     On or about October 30, 2006, BERNARDINO caused check number 1156 drawn on the account of The Wren Group, Inc., payable to JA-Ash Inc., in the

8

amount of $8,500, to be sent and delivered by Federal Express from Tallahassee, Florida, to 2933 North Myrtle Avenue, Jacksonville, Florida.

12.    On or about November 13, 2006, NELSON caused check number 1156, drawn on the account of The Wren Group, Inc., at SunTrust, made payable to JA-Ash Inc., in the amount of $8,500, to be deposited into JA-Ash Enterprises, Inc. account at Wachovia Bank, account number XXXXX76.

13.    On or about November 30, 2006, BERNARDINO caused check number 1169, drawn on the account of The Wren Group, Inc., payable to JA-Ash Inc., in the amount of $8,500, to be sent and delivered by Federal Express from Tallahassee, Florida, to 2933 North Myrtle Avenue, Jacksonville, Florida.

14.    On or about December 7, 2006, NELSON caused check number 1169, drawn on the account of The Wren Group, Inc., at SunTrust, made payable to JA-Ash Inc., in the amount of $8,500, to be deposited into JA-Ash Enterprises, Inc. account at Wachovia Bank, account number XXXXX76.

15.    On or about January 3, 2007, BERNARDINO caused check number 1181, drawn on the account of The Wren Group, Inc., payable to JA-Ash Inc., in the amount of $8,500, to be sent and delivered by Federal Express from Tallahassee, Florida, to 2933 North Myrtle Avenue, Jacksonville, Florida.

16.    On or about January 12, 2007, NELSON caused check number 1181, drawn on the account of The Wren Group, Inc., at SunTrust, made payable to JA-Ash, Inc., in the amount of $8,500, to be deposited into JA-Ash Enterprises, Inc. account at Wachovia Bank, account number XXXXX76.

17.     On or about January 31, 2007, BERNARDINO caused check number 1196, drawn on the account of The Wren Group, Inc., payable to JA-Ash, Inc., in the amount of $8,500, to be sent and delivered by Federal Express from Tallahassee, Florida, to 2933 North Myrtle Avenue, Jacksonville, Florida.

18.     On or about February 1, 2007, NELSON caused check number 1196, drawn on the account of The Wren Group, Inc., at SunTrust, made payable to JA-Ash, Inc., in the amount of $8,500, to be deposited into JA-Ash Enterprises, Inc. account at Wachovia Bank, account number XXXXX76.

19.     On about February 2, 2007, Young caused check number 21394, in the amount of $210,876.83, drawn on SSI's operating account, account number XXXXXXXX47, at Bank of America, to be sent to BERNARDINO, via The Wren Group, Inc., which included funds to be corruptly paid to NELSON by BERNARDINO.

20.     On or about February 5, 2007, at Tallahassee, Florida, BERNARDINO caused check number 21394, in the amount of $210,876.83, drawn on SSI's operating account, account number 3446399547, at Bank of America, to be deposited into BERNARDINO's account for The Wren Group, Inc, account number XXXXXXXXXXX82, with SunTrust Bank.

21.     On or about March 6, 2007, BERNARDINO caused check number 1211, drawn on the account of The Wren Group, Inc., payable to JA-Ash, Inc., in the amount of $8,500, to be sent and delivered by Federal Express from Tallahassee, Florida, to 2933 North Myrtle Avenue, Jacksonville, Florida.

22.     On or about March 8, 2007, NELSON caused check number 1211, drawn on the account of The Wren Group, Inc., at SunTrust, made payable to JA-Ash,

Inc., in the amount of $8,500, to be deposited into JA-Ash Enterprises, Inc. account at Wachovia Bank, account number XXXXX76.

23.     On or about March 28, 2007, BERNARDINO caused check number 1226, drawn on the account of The Wren Group, Inc., payable to JA-Ash, Inc., in the amount of $8,500, to be sent and delivered by Federal Express from Tallahassee, Florida, to 2933 North Myrtle Avenue, Jacksonville, Florida.

24.     On or about April 5, 2007, NELSON caused check number 1226, drawn on the account of The Wren Group, Inc., at SunTrust, made payable to JA-Ash, Inc., in the amount of $8,500, to be deposited into JA-Ash Enterprises, Inc. account at Wachovia Bank, account number XXXXX76.

25.     On or about April 30, 2007, BERNARDINO caused check number 1245, drawn on the account of The Wren Group, Inc., payable to JA-Ash, Inc., in the amount of $8,500, to be sent and delivered by Federal Express from Tallahassee, Florida, to 2933 North Myrtle Avenue, Jacksonville, Florida.

26.     On or about May 3, 2007, NELSON caused check number 1245, drawn on the account of The Wren Group, Inc., at SunTrust, made payable to JA-Ash, Inc., in the amount of $8,500, to be deposited into JA-Ash Enterprises, Inc. account at Wachovia Bank, account number XXXXX76.

27.     On or about May 23, 2007, in an effort to hide and conceal the conspiracy, NELSON caused an attorney to send a letter to Mr. Lake Ray, which falsely and fraudulently stated that NELSON had no financial arrangement or interest with any individual or corporation with contracts at Jaxport, when in truth and fact, as NELSON then knew, NELSON had financial arrangements with an individual and corporation with

11

contracts at Jaxport, specifically, Young and SSI, which included: (1) NELSON

receiving monthly payments of $8,500 from Young/SSI, which were paid through

BERNARDINO; and (2) NELSON's company, JA-Ash Enterprises, Inc., entering into a

written contract on or about March 27, 2007, under which SSI performed certain

dredging work as a subcontractor for Murifield Partners, Inc. at the small boat basin,

United States Coast Guard Base Mayport, for which Murifield Partners, Inc. was paid

$19,000 by the United States Treasury on or about May 14, 2007, and NELSON

thereafter issued a Muirfield Partners, Inc. check to SSI for $17,000 on or about May

24, 2007.

28.     On or about May 30, 2007, BERNARDINO caused check number 1258,

drawn on the account of The Wren Group, Inc., payable to JA-Ash, Inc., in the amount

of $8,500, to be sent and delivered by Federal Express from Tallahassee, Florida, to

2933 North Myrtle Avenue, Jacksonville, Florida.

29.     On or about June 6, 2007, NELSON caused check number 1258,

drawn on the account of The Wren Group, Inc., at SunTrust, made payable to JA-Ash,

Inc., in the amount of $8,500, to be deposited into JA-Ash Enterprises, Inc. account at

Wachovia Bank, account number XXXXX76.

30.     On or about June 29, 2007, BERNARDINO caused check number 1265,

drawn on the account of The Wren Group, Inc., payable to JA-Ash, Inc., in the amount

of $8,500, to be sent and delivered by Federal Express from Tallahassee, Florida, to

2933 North Myrtle Avenue, Jacksonville, Florida.

31.     On or about July 10, 2007, NELSON caused check number 1265,

drawn on the account of The Wren Group, Inc., at SunTrust, made payable to JA-Ash,

Inc., in the amount of $8,500, to be deposited into JA-Ash Enterprises, Inc. account at Wachovia Bank, account number XXXXX76.

32.     In or about July or August, 2007, Young and NELSON met at a Jacksonville, Florida, restaurant to discuss the monthly payments Young had been making to NELSON and it was agreed that further monthly payments would accrue and a final lump-sum payment would be made in the future.

33.     On or about February 18, 2008, during the time-frame that Young was negotiating the sale of SSI to Orion, NELSON telephoned Young and advised Young to delay dealing with a dredging issue at Jaxport until he (Young) closed on the sale of SSI, because that was where his (Young's) value to the new owners (Orion) was going to be.  During the telephone conversation, NELSON stated that they (Orion) were not going to get the help that Young was going to get and that Young should not make any new deals until the closing of SSI because that would increase his value to them because they (Orion) would need some help.  NELSON further stated that they (Orion) were going to need Young's help because they were not going to find the same thing that Young found.

34.     On or about March 24, 2008, NELSON, as Vice-Chairman of the Jaxport Board of Directors, voted to approve the award of a contract to perform dredging services to create a turning basin at the Dames Point Container Terminal, MOL project, in an amount not to exceed $2,500,000 to Subaqueous Services, LLC.

35.     On or about March 27, 2008, shortly before Young took NELSON to dinner at a Ruth's Chris Restaurant, in Jacksonville, Florida, Young provided NELSON a check in the amount of $50,000, representing the lump sum payment which Young

and NELSON had agreed upon as further payment for NELSON being corruptly influenced in the performance of his official duties as a Jaxport Board Member with regards to Young's business, SSI, with Jaxport.

36.   On or about March 28, 2008, in Jacksonville, Florida, NELSON deposited a $50,000 check he received from Young into a Wachovia Bank securities brokerage account in the name of Muirfield Partners.

37.   On or about March 28, 2008, NELSON caused a false and fraudulent entry to be made on the $50,000 check he received from Young, in an effort to hide and conceal the true nature of the payment.

38.   On or about April 23, 2008, NELSON falsely and fraudulently stated to Special Agents of the Federal Bureau of Investigation, that Lance W. Young had recently loaned him (NELSON) $50,000, which NELSON then knew to be false, fictitious and fraudulent.

All in violation of Title 18, United States Code, Section 371.

## COUNTS TWO THROUGH THIRTEEN
### (Mail Fraud)

### A. <u>INTRODUCTION</u>

Part A of Count One of this Indictment, Introduction, is realleged and incorporated by reference as if fully set forth herein.

### B. <u>SCHEME AND ARTIFICE</u>

From at least mid 2006, through on or about April 23, 2008, at Duval, Volusia, and Orange Counties, in the Middle District of Florida; Leon County in the Northern District of Florida; and elsewhere,

TONY DEVAUGHN NELSON,
FRANK S. BERNARDINO,

the defendants herein, did knowingly and willfully devise and intend to devise a scheme and artifice to defraud and for obtaining money and property by materially false and fraudulent pretenses, representations and promises.

### C. <u>MANNER AND MEANS</u>

Part C of Count One of this Indictment, Manner and Means, is realleged and incorporated by reference as if fully set forth herein.

### D. <u>EXECUTION</u>

On or about the dates set forth below in each count, at Duval County, in the Middle District of Florida, Leon County, in the Northern District of Florida, and elsewhere, for the purpose of executing the aforementioned scheme and artifice, and attempting to do so,

TONY DEVAUGHN NELSON,
FRANK S. BERNARDINO,

the defendants herein, for the purpose of executing the aforesaid scheme and to fraudulently deprive the public of the intangible right of honest services, did knowingly deposit and cause to be deposited, certain matters and things, as identified below, to be sent and delivered by Federal Express, a commercial interstate carrier, to the addresses listed below:

| COUNT | DATE | ITEM MAILED | MAILED FROM | MAILED TO | CARRIER |
|-------|------|-------------|-------------|-----------|---------|
| **TWO** | 8/17/06 | Check # 1114 $8,500 | The Wren Group, Inc., 2220 Armistead Rd Tallahassee, FL | JA-Ash Enterprises, Inc 2933 N. Myrtle Ave Jacksonville, FL | Federal Express |
| **THREE** | 9/28/06 | Check # 1135 $8,500 | The Wren Group, Inc., 2220 Armistead Rd Tallahassee, FL | JA-Ash Enterprises, Inc 2933 N. Myrtle Ave Jacksonville, FL | Federal Express |
| **FOUR** | 10/30/06 | Check # 1156 $8,500 | The Wren Group, Inc., 2220 Armistead Rd Tallahassee, FL | JA-Ash Enterprises, Inc 2933 N. Myrtle Ave Jacksonville, FL | Federal Express |
| **FIVE** | 11/30/06 | Check # 1169 $8,500 | The Wren Group, Inc., 2220 Armistead Rd Tallahassee, FL | JA-Ash Enterprises, Inc. 2933 N. Myrtle Ave Jacksonville, FL | Federal Express |

| COUNT | DATE | ITEM MAILED | MAILED FROM | MAILED TO | CARRIER |
|-------|------|-------------|-------------|-----------|---------|
| **SIX** | 1/3/07 | Check # 1181 $8,500 | The Wren Group, Inc., 2220 Armistead Rd Tallahassee, FL | JA-Ash Enterprises, Inc 2933 N. Myrtle Ave Jacksonville, FL | Federal Express |
| **SEVEN** | 1/31/07 | Check # 1196 $8,500 | The Wren Group, Inc., 2220 Armistead Rd Tallahassee, FL | JA-Ash Enterprises, Inc 2933 N. Myrtle Ave Jacksonville, FL | Federal Express |
| **EIGHT** | 2/2/07 | Check # 21394 $210,876.83 | SSI 390 N. Orange Ave Suite 2600 Orlando, FL | The Wren Group, Inc., 2220 Armistead Rd Tallahassee, FL | Federal Express |
| **NINE** | 3/06/07 | Check # 1211 $8,500 | The Wren Group, Inc., 2220 Armistead Rd Tallahassee, FL | JA-Ash Enterprises, Inc 2933 N. Myrtle Ave Jacksonville, FL | Federal Express |
| **TEN** | 3/28/07 | Check # 1226 $8,500 | The Wren Group, Inc., 2220 Armistead Rd Tallahassee, FL | JA-Ash Enterprises, Inc 2933 N. Myrtle Ave Jacksonville, FL | Federal Express |

| COUNT | DATE | ITEM MAILED | MAILED FROM | MAILED TO | CARRIER |
|---|---|---|---|---|---|
| **ELEVEN** | 4/30/07 | Check # 1245 $8,500 | The Wren Group, Inc., 2220 Armistead Rd Tallahassee, FL | JA-Ash Enterprises, Inc 2933 N. Myrtle Ave Jacksonville, FL | Federal Express |
| **TWELVE** | 5/30/07 | Check # 1258 $8,500 | The Wren Group, Inc., 2220 Armistead Rd Tallahassee, FL | JA-Ash Enterprises, Inc 2933 N. Myrtle Ave Jacksonville, FL | Federal Express |
| **THIRTEEN** | 6/29/07 | Check # 1265 $8,500 | The Wren Group, Inc., 2220 Armistead Rd Tallahassee, FL | JA-Ash Enterprises, Inc 2933 N. Myrtle Ave Jacksonville, FL | Federal Express |

In violation of Title 18 United States Code, Sections 1341, 1346 and 2.

## COUNTS FOURTEEN THROUGH TWENTY-FOUR
### (Money Laundering)

On or about the dates set forth below in each count, at Duval County, in the Middle District of Florida, and elsewhere,

### TONY DEVAUGHN NELSON,
### FRANK S. BERNARDINO,

the defendants herein, as set forth below in each count, did knowingly and willfully conduct and attempt to conduct a financial transaction affecting interstate commerce and did aid and abet the knowing and willful conducting of a financial transaction affecting interstate commerce, that is, the deposit of checks, drawn on a bank account of The Wren Group, Inc., at SunTrust Bank, into an account for JA-Ash Enterprises, Inc., account number XXXXX76, at Wachovia Bank, which involved the proceeds of a specified unlawful activity, that is, mail fraud, in violation of 18 United States Code, Section 1341, and bribery concerning programs receiving Federal funds, in violation of 18 United States Code, Section 666, with the intent to conceal and disguise the nature, the source, the ownership and control of the proceeds of the specified unlawful activity, and that while conducting and attempting to conduct such financial transactions, knew that the property involved in the financial transactions, that is, the $8,500 checks set forth below, represented the proceeds of some form of unlawful activity.

| COUNT | DATE | FINANCIAL TRANSACTION |
|-------|------|-----------------------|
| FOURTEEN | 8/18/06 | Deposit of check number 1114, in the amount of $8,500, drawn on a bank account of The Wren Group, Inc., at SunTrust Bank, into an account for JA-Ash Enterprises, Inc., account number XXXXX76, at Wachovia Bank, Jacksonville, Florida. |

| COUNT | DATE | FINANCIAL TRANSACTION |
|---|---|---|
| FIFTEEN | 10/3/06 | Deposit of check number 1135, in the amount of $8,500, drawn on a bank account of The Wren Group, Inc., at SunTrust Bank, into an account for JA-Ash Enterprises, Inc., account number XXXXX76, at Wachovia Bank, Jacksonville, Florida. |
| SIXTEEN | 11/13/06 | Deposit of check number 1156, in the amount of $8,500, drawn on a bank account of The Wren Group, Inc., at SunTrust Bank, into an account for JA-Ash Enterprises, Inc., account number XXXXX76, at Wachovia Bank, Jacksonville, Florida. |
| SEVENTEEN | 12/7/06 | Deposit of check number 1169, in the amount of $8,500, drawn on a bank account of The Wren Group, Inc., at SunTrust Bank, into an account for JA-Ash Enterprises, Inc., account number XXXXX76, at Wachovia Bank, Jacksonville, Florida. |
| EIGHTEEN | 1/12/07 | Deposit of check number 1181, in the amount of $8,500, drawn on a bank account of The Wren Group, Inc., at SunTrust Bank, into an account for JA-Ash Enterprises, Inc., account number XXXXX76, at Wachovia Bank, Jacksonville, Florida. |
| NINETEEN | 2/1/07 | Deposit of check number 1196, in the amount of $8,500, drawn on a bank account of The Wren Group, Inc., at SunTrust Bank, into an account for JA-Ash Enterprises, Inc., account number XXXXX76, at Wachovia Bank, Jacksonville, Florida. |
| TWENTY | 3/8/07 | Deposit of check number 1211, in the amount of $8,500, drawn on a bank account of The Wren Group, Inc., at SunTrust Bank, into an account for JA-Ash Enterprises, Inc., account number XXXXX76, at Wachovia Bank, Jacksonville, Florida. |
| TWENTY-ONE | 4/5/07 | Deposit of check number 1226, in the amount of $8,500, drawn on a bank account of The Wren Group, Inc., at SunTrust Bank, into an account for JA-Ash Enterprises, Inc., account number XXXXX76, at Wachovia Bank, Jacksonville, Florida. |
| TWENTY-TWO | 5/3/07 | Deposit of check number 1245, in the amount of $8,500, drawn on a bank account of The Wren Group, Inc., at SunTrust Bank, into an account for JA-Ash Enterprises, Inc., account number XXXXX76, at Wachovia Bank, Jacksonville, Florida. |
| TWENTY-THREE | 6/6/07 | Deposit of check number 1258, in the amount of $8,500, drawn on a bank account of The Wren Group, Inc., at SunTrust Bank, into an account for JA-Ash Enterprises, Inc., account number XXXXX76, at Wachovia Bank, Jacksonville, Florida. |
| TWENTY-FOUR | 7/10/07 | Deposit of check number 1265, in the amount of $8,500, drawn on a bank account of The Wren Group, Inc., at SunTrust Bank, into an account for JA-Ash Enterprises, Inc., account number XXXXX76, at Wachovia Bank, Jacksonville, Florida. |

In violation of Title 18, United States Code, Sections 1956(a)(1)(B)(I) and 2.

## COUNTS TWENTY- FIVE THROUGH THIRTY-SIX
### (Bribery Concerning Programs Receiving Federal Funds)

### A. INTRODUCTION

Part A of Count One of this Indictment, Introduction, is realleged and incorporated by reference as if fully set forth herein.

### B. CHARGE

On or about the dates listed below for each Count, at Duval, Volusia, and Orange Counties, in the Middle District of Florida, and elsewhere,

TONY DEVAUGHN NELSON,
FRANK S. BERNARDINO,

the defendants herein, did cause and aide and abet corruptly demanding, accepting and agreeing to accept a thing of value from a person, intending to be influenced and rewarded in connection with a transaction or series of transactions of Jaxport involving in excess of $5,000.

| COUNT | DATE | ITEM | ISSUER OF CHECK |
|---|---|---|---|
| TWENTY-FIVE | 8/17/06 | Check # 1114 $8,500 | The Wren Group, Inc., Tallahassee, Florida |
| TWENTY-SIX | 9/28/06 | Check # 1135 $8,500 | The Wren Group, Inc., Tallahassee, Florida |
| TWENTY-SEVEN | 10/30/06 | Check # 1156 $8,500 | The Wren Group, Inc., Tallahassee, Florida |
| TWENTY-EIGHT | 11/30/06 | Check # 1169 $8,500 | The Wren Group, Inc., Tallahassee, Florida |
| TWENTY-NINE | 1/3/07 | Check # 1181 $8,500 | The Wren Group, Inc., Tallahassee, Florida |
| THIRTY | 1/31/07 | Check # 1196 $8,500 | The Wren Group, Inc., Tallahassee, Florida |

| COUNT | DATE | ITEM | ISSUER OF CHECK |
|---|---|---|---|
| **THIRTY-ONE** | 3/06/07 | Check # 1211 $8,500 | The Wren Group, Inc., Tallahassee, Florida |
| **THIRTY-TWO** | 3/28/07 | Check # 1226 $8,500 | The Wren Group, Inc., Tallahassee, Florida |
| **THIRTY-THREE** | 4/30/07 | Check # 1245 $8,500 | The Wren Group, Inc., Tallahassee, Florida |
| **THIRTY-FOUR** | 5/30/07 | Check # 1258 $8,500 | The Wren Group, Inc., Tallahassee, Florida |
| **THIRTY-FIVE** | 6/29/07 | Check # 1265 $8,500 | The Wren Group, Inc., Tallahassee, Florida |
| **THIRTY-SIX** | 3/27/08 | Check # 1000 $50,000 | L. W. Young Consulting Group, LLC, Orlando, Florida |

In violation of Title 18, United States Code, Sections 666(a)(1)(B) and 2.

## COUNTS THIRTY-SEVEN THROUGH FORTY-THREE
### (Mail Fraud)

### A. INTRODUCTION

At all times material herein, unless otherwise specified:

### THE DEFENDANT

1.     TONY DEVAUGHN NELSON, a resident of Jacksonville, Florida, was a businessman, owning and operating numerous State of Florida corporations, holding high-level positions in several non-profit organizations, and holding an appointed position on the Jacksonville Port Authority (Jaxport).

## ENTITIES INVOLVED IN THE FRAUDULENT SCHEME

2.      The Jacksonville Port Authority (Jaxport) was an organization and an independent governmental agency of the State of Florida and was responsible for the development and management of Jacksonville's public seaport terminals.  Jaxport was governed by a seven (7) member board of directors who serve in an unpaid capacity for four year terms.  The Mayor of the City of Jacksonville appoints four (4) of the board's members and the Governor of the State of Florida appoints three (3) of the board's members.  NELSON was originally appointed to Jaxport's board of directors by the Mayor of Jacksonville in 2001 and was re-appointed by the Mayor of Jacksonville in 2005.

3.      Subaqueous Services, Inc. (SSI) was a State of Florida for profit company owned and operated by Young.  SSI, headquartered in Orlando, Florida, was a marine trade business, principally involved in dredging waterways, including ship terminals for Jaxport.  SSI first received a contract with Jaxport in December 2005 and continuously had business with Jaxport through at least April 2008.

4.      Rham Construction, Inc. (Rham Construction), was a State of Florida for profit company operating in Jacksonville and engaged in the engineering and construction field.  Rham Construction was owned and operated by Corey N. Ritchie and was certified by the City of Jacksonville as a Small and Emerging Business (JSEB).

## BANK ACCOUNT UTILIZED IN THE FRAUDULENT SCHEME

5.      Business checking account opened at R G Crown Bank, in the name of Rham Construction, Inc., opened on May 26, 2005 (Rham Construction Account).  The Rham Construction account was opened by TONY DEVAUGHN NELSON at the bank's Merrill Road branch, located at 9125 Merrill Road, Jacksonville, Florida.  In opening the

account, TONY DEVAUGHN NELSON identified himself as the Chairman of Rham Construction, Inc., and the source of the opening deposit, in the amount of $20,000, was a personal check from a personal bank account in the name of TONY DEVAUGHN NELSON at Bank of America.

## BACKGROUND

6.     The Jacksonville Small and Emerging Business (JSEB) program was designed by the City of Jacksonville's Equal Business Opportunity Office to promote fair and equitable opportunities to all vendors.  In order to be certified under the JSEB program, the owner(s) and the business was required to meet certain citizenship, residency, net worth, gross receipts and control requirements.  Another certification under the JSEB program was Minority Business Enterprise (MBE), which had an additional requirement that the qualifying business owner(s) be either: (1) Black/African-American; (2) Hispanic-American; (3) Native-American; (4) Asian-American; or (5) female.  In an effort to promote business opportunities for small businesses and minority owned businesses at Jaxport, when appropriate, contracts for work at Jaxport required that a certain portion of the work under the contract be performed by companies meeting City of Jacksonville JSEB and/or MBE requirements.

## B. SCHEME AND ARTIFICE

From in or about November, 2005 through in or about May, 2006, at Jacksonville and Orlando, in the Middle District of Florida, and elsewhere,

TONY DEVAUGHN NELSON,

the defendant herein, did knowingly and willfully devise and intend to devise a scheme and artifice to defraud, and for obtaining money by means of materially false and fraudulent pretenses, representations and promises.

24

## C. MANNER AND MEANS

1.      It was part of the scheme and artifice that TONY DEVAUGHN NELSON, while a sitting board member on the Jaxport Board of Directors, would victimize Jaxport and others by wrongfully exploiting a 20% JSEB/MBE participation goal in a 2005 solicitation for bids by Jaxport seeking emergency dredging services for Talleyrand and Dames Point Marine Terminals.

2.      It was further part of the scheme and artifice that TONY DEVAUGHN NELSON would advise Lance W. Young, owner of SSI, to represent in an official bid submitted to Jaxport in response to the solicitation for bids to perform Emergency Dredging at Talleyrand and Dames Point Marine Terminals, Jacksonville, Florida, that Rham Construction, a certified JSEB/MBE participant, would act as a subcontractor under SSI's bid and perform 20% of the work, when in truth and fact, Rham Construction was unaware that its corporate identity was being used in connection with SSI's bid on the emergency dredging contract.

3.      It was further part of the scheme and artifice that TONY DEVAUGHN NELSON would provide to SSI, through facsimile transmission, fraudulent documentation, which TONY DEVAUGHN NELSON knew would be submitted to Jaxport by SSI in connection with the bid process for the emergency dredging contract, including: (1) an "Identification Affidavit"; and (2) a "Letter of Intent to Perform", which bore the alleged signature of Corey Richie, but in reality, were forged signatures by TONY DEVAUGHN NELSON.

4.      It was further part of the scheme and artifice that TONY DEVAUGHN NELSON would forge the signature of Corey Richie on a Professional Services Contract, purported to be entered into by SSI and Rham Construction.

5.      It was further part of the scheme and artifice that TONY DEVAUGHN NELSON would cause SSI to issue checks to Rham Construction for its alleged participation in the 2005 emergency dredging contract.

6       It was further part of the scheme and artifice that SSI would mail checks to Rham Construction, using the United States Postal Service, representing payments to Rham Construction for its alleged participation in the emergency dredging contract.

7.      It was further part of the scheme and artifice that TONY DEVAUGHN NELSON would fraudulently obtain, from mail addressed and delivered to Rham Construction, checks issued by SSI and made payable to Rham Construction, representing payments to Rham Construction for its alleged participation in the emergency dredging contract.

8.      It was further part of the scheme and artifice that TONY DEVAUGHN NELSON would deposit checks from SSI and made payable to Rham Construction, into the Rham Construction bank account with R-G Crown, at the Merrill Road branch, which had been previously opened by TONY DEVAUGHN NELSON.

## D. MAILINGS

On or about the dates set forth below in each count, at Jacksonville, in the Middle District of Florida,

TONY DEVAUGHN NELSON,

the defendant herein, for the purpose of executing the aforesaid scheme and artifice to

defraud, and for obtaining money by means of materially false and fraudulent
pretenses, representations, and promises, did knowingly place and cause to be placed
in a post office and authorized depository for mail matter, the following mail matter and
things for delivery by the United States Postal Service as identified below to the
addresses listed below:

| COUNT | DATE | ITEM MAILED | MAILED FROM | MAILED TO |
|-------|------|-------------|-------------|-----------|
| THIRTY-SEVEN | 3/13/06 | $3,000 check issued by SSI and payable to Rham Construction | SSI 390 N. Orange Ave Suite 2600 Orlando, Florida | Rham Construction 2933 N. Myrtle Ave. Suite 200 Jacksonville, Florida |
| THIRTY-EIGHT | 3/16/06 | $1,000 check issued by SSI and payable to Rham Construction | SSI 390 N. Orange Ave Suite 2600 Orlando, Florida | Rham Construction 2933 N. Myrtle Ave. Suite 200 Jacksonville, Florida |
| THIRTY-NINE | 3/22/06 | $1,000 check issued by SSI and payable to Rham Construction | SSI 390 N. Orange Ave Suite 2600 Orlando, Florida | Rham Construction 2933 N. Myrtle Ave. Suite 200 Jacksonville, Florida |
| FORTY | 3/31/06 | $1,000 check issued by SSI and payable to Rham Construction | SSI 390 N. Orange Ave Suite 2600 Orlando, Florida | Rham Construction 2933 N. Myrtle Ave. Suite 200 Jacksonville, Florida |
| FORTY-ONE | 4/6/06 | $1,000 check issued by SSI and payable to Rham Construction | SSI 390 N. Orange Ave Suite 2600 Orlando, Florida | Rham Construction 2933 N. Myrtle Ave. Suite 200 Jacksonville, Florida |
| FORTY-TWO | 4/13/06 | $1,000 check issued by SSI and payable to Rham Construction | SSI 390 N. Orange Ave Suite 2600 Orlando, Florida | Rham Construction 2933 N. Myrtle Ave. Suite 200 Jacksonville, Florida |
| FORTY-THREE | 4/20/06 | $1,000 check issued by SSI and payable to Rham Construction | SSI 390 N. Orange Ave Suite 2600 Orlando, Florida | Rham Construction 2933 N. Myrtle Ave. Suite 200 Jacksonville, Florida |

In violation of Title 18, United States Code, Sections 1341 and 2.

## COUNT FORTY-FOUR
### (False Statement)

On or about April 23, 2008, at Jacksonville, in the Middle District of Florida,

### TONY DEVAUGHN NELSON,

the defendant herein, did knowingly and willfully make false, fictitious and fraudulent

material statements and representations in a matter within the jurisdiction of the Federal

Bureau of Investigation, an agency of the United States, by stating that Lance W.

Young had recently loaned him (NELSON) $50,000, which the defendant then knew to

be false, fictitious and fraudulent.

In  violation of Title 18, United States Code, Section 1001.

## FORFEITURES

1.      The allegations contained in Count One, Counts Two through Count Thirteen, Counts Fourteen through Count Twenty-four, Counts Twenty-five through Count Thirty-six and Counts Thirty-seven through Count Forty-three of this Indictment are hereby realleged and incorporated by reference for the purpose of alleging forfeitures pursuant to the provisions of Title 18, United States Code, Section 981(a)(1)(C) and Title 28, United States Code, Section 2461(c), and Title 18, United States Code, Section 982.

2.      From their engagement in the violations alleged in Count One, Counts Two through Count Thirteen, and Counts Twenty-five through Count Thirty-six of this Indictment, punishable by imprisonment for more than one year, the defendants

TONY DEVAUGHN NELSON,
FRANK S. BERNARDINO,

shall forfeit to the United States of America, pursuant to Title 18, United States Code, Section 981(a)(1)(C) and Title 28, United States Code, Section 2461(c), all of their interest in any property, real or personal, constituting or derived from proceeds traceable to said violations.  Specifically, defendants TONY DEVAUGHN NELSON and FRANK S. BERNARDINO are jointly and severally liable for a forfeiture money judgment in the amount of $93,500.00, representing the proceeds obtained from the charged conspiracy and substantive violations, in addition, defendant TONY DEVAUGHN NELSON is also liable for an additional $50,000.00 forfeiture money judgment, reflecting the additional proceeds he obtained as a result of the charged conspiracy.  In partial satisfaction of such money judgments, the United States seeks to forfeit approximately $139,000.00 remitted to the United States Marshals Service on

29

October 16, 2008, on behalf of defendant TONY DEVAUGHN NELSON.

3.      From their engagement in the violations alleged in Counts Fourteen through Count Twenty-four of this Indictment, punishable by imprisonment for more than one year, the defendants

TONY DEVAUGHN NELSON,
FRANK S. BERNARDINO,

shall forfeit to the United States of America, pursuant to Title 18, United States Code, Section 982(a)(1), any and all right, title, and interest they may have in any property, real or personal, involved in such offenses, or any property traceable to such property, as a result of such violations of 18 U.S.C. § 1956(a)(1)(B)(i). Specifically, the defendants shall forfeit the $93,500.00 involved in the charged money laundering violations.

4.      From his engagement in the violations alleged in Counts Thirty-seven through Count Forty-three of this Indictment, punishable by imprisonment for more than one year, the defendant, TONY DEVAUGHN NELSON, shall forfeit to the United States of America, pursuant to Title 18, United States Code, Section 981(a)(1)(C) and Title 28, United States Code, Section 2461(c), all of his interest in any property constituting or derived from proceeds obtained directly or indirectly as a result of the such violations of 18 U.S.C. § 1341.

5.      If any of the property described in the above paragraphs, as a result of any act or omission of the defendants:

a.      cannot be located upon the exercise of due diligence;

b.      has been transferred or sold to, or deposited with, a third party;

c.      has been placed beyond the jurisdiction of the court;

d.      has been substantially diminished in value; or

e.      has been commingled with other property which cannot be divided without difficulty,

the United States of America shall be entitled to forfeiture of substitute property under the provisions of Title 21, United States Code, Section 853(p), as incorporated by Title 28, United States Code, Section 2461(c), and Title 18, United States Code, Section 982(b)(1).

A TRUE BILL,

_____
Foreperson

A. BRIAN ALBRITTON
United States Attorney

By:   _____
JULIE HACKENBERRY SAVELL
Assistant United States Attorney
Chief, Jacksonville Division

By:   _____
MAC D. HEAVENER, III
Assistant United States Attorney
Deputy Chief, Jacksonville Division

By:   _____
MARK B. DEVEREAUX
Assistant United States Attorney

31

FORM OBD-34
APR 1991

No. 2009-01

# UNITED STATES DISTRICT COURT

Middle District of Florida
Jacksonville Division

## THE UNITED STATES OF AMERICA

vs.

**TONY DEVAUGHN NELSON,
FRANK S. BERNARDINO**

### INDICTMENT

Violations:

Ct. 1: 18 U.S.C. § 371
Cts. 2-13: 18 U.S.C. §§ 1341 & 2
Cts. 14-24: 18 U.S.C. §§ 1956(a)(1)(B)(i) & 2
Cts. 25-36: 18 U.S.C. §§ 666(a)(1)(B) & 2
Cts. 37-43: 18 U.S.C. §§ 1341 & 2
Ct. 44: 18 U.S.C. § 1001

A true bill

_____
Foreperson

Filed in open court this 21st day of

January, 2010.

_____
Clerk

Bail $ _____

Revised 05 03 2007

GPO 863 525